IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSALINA ENRIQUEZ, on behalf
of R.M.F., a minor,

    Plaintiff,

v.                                                                                                Civ. No. 16-361 SCY

NANCY BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for a Rehearing with Supporting Memorandum. Doc. 20. Defendant filed its response on January 11, 2017. Doc. 22. Plaintiff filed her reply on January 26, 2017. Doc. 25. Having reviewed the Motion, the relevant law, and being otherwise fully advised, the Court DENIES the Motion for the reasons explained below.

**I.    BACKGROUND**

Plaintiff brings the present claim on behalf of R.M.F., a minor. Plaintiff filed an application for supplemental social security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Plaintiff claimed disability on the basis of learning/speech impairments and asthma. Administrative Record (AR) 236. Plaintiff initially claimed a disability onset date of January 1, 2001 but later amended the onset date to August 5, 2011. AR 236, 523. Plaintiff's claim was denied initially on March 13, 2012, and upon reconsideration on November 9, 2012. AR 12. Plaintiff thereafter requested a hearing. AR 12. The hearing was held on January 6, 2014. AR 12. On July 15, 2014, the Administrative Law Judge (ALJ) found R.M.F. not

1

disabled. AR 28. The Appeals Council declined review. AR 1-5. This appeal followed. Because the parties are familiar with the record in this case, the Court will reserve discussion of R.M.F's pertinent medical history for its analysis of the issues currently presented.

## II. APPLICABLE LAW

### A. Determining Disability for Children

A child is disabled for purposes of receiving SSI if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(C)(i). The ALJ uses a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). At Step One, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *see also Briggs*, 248 F.3d at 1237. If he or she is, the ALJ may not find the child to be disabled. 20 C.F.R. § 416.924(b). At Step Two, the ALJ examines whether "the child has an impairment or combination of impairments that is severe . . . ." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)); *see also* 20 C.F.R. § 416.924(c). If there are no severe impairments, the child is not disabled. 20 C.F.R. § 416.924(c). Finally, at Step Three the ALJ determines whether the child's impairment(s) "meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)); *see also* 20 C.F.R. §419.924(d).

"An impairment will be found to cause 'marked and severe functional limitations' if it meets or medically equals a listed impairment, or if it is functionally equal in severity to a listed impairment." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1156–57 (D.

Kan. 2004) (citing 20 C.F.R. §§ 416.924(d), 416.926a). "To be functionally equivalent, the child's limitations must be at least equal in severity and duration to limitations associated with a listed impairment." *Id.* (citing 20 C.F.R. § 416.926). "The 'functionally equivalent' analysis requires the Commissioner to analyze six domains, which are 'broad areas of functioning intended to capture all of what a child can or cannot do.'" *Id.* (quoting 20 C.F.R. § 416.926a(b)(1)). The six domains to be addressed by the ALJ include: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being." *Id.* (citing 20 C.F.R. § 416.926a(b)(1)(i)–(vi)).

"A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability under the Act, when it results in 'marked' limitations in two domains or an 'extreme' limitation in one domain, as described under the relevant regulation, 20 C.F.R. § 416.926a." *Perez v. Astrue*, No. 08-cv-02176-PAB, 2009 WL 3076259, at *4 (D. Colo. Sept. 23, 2009). In general, a limitation is "marked" when it "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation *very* seriously interferes with this ability. 20 C.F.R. § 416.926(e)(3)(i). In determining whether a limitation is marked or extreme, the "whole child" approach seeks answers to questions about the child's activities, limitations, and the factors involved in the limited activities to construct a picture "of the child's functioning in each domain." SSR 09-1p, Title XVI: Determining Childhood Disability under the Functional Equivalence Rule – The "Whole Child" Approach, 2009 WL 396031, at *7 (Feb. 17, 2009).

**B. Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not

3

supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff raises three issues for review. Plaintiff first argues that the ALJ failed to properly evaluate whether R.M.F. has an extreme limitation in the acquiring and using information

domain. Second, Plaintiff argues that the ALJ failed to properly evaluate whether R.M.F. has marked limitations in the health and physical well-being domain. Finally, Plaintiff contends that the ALJ's credibility determinations were in error. The Court will address these contentions in turn.

**A. The ALJ's Credibility Determination**

The Court begins with Plaintiff's argument regarding the ALJ's credibility determination. Plaintiff takes issue with the ALJ's finding that third party statements regarding the "intensity, persistence and limiting effects of" R.M.F.'s symptoms were "not entirely credible." AR 20. The ALJ specifically questioned the credibility of R.M.F.'s Mother's claim that he "does not do well socially and gets migraines daily." AR 20. The ALJ further highlighted R.M.F.'s Step-father's statements that he has a "hard time with criticism, does not sleep well and has headaches which are severe at times and appear to be stress-related (five or six times a week)." AR 20. R.M.F's Step-father also testified that he "cannot be athletic without his inhaler, does not work well in larger groups in a classroom setting, has a lot of problems at school…and has increased stuttering when stressed." AR 20. The ALJ found these statements not credible because there was "no indication that these individuals are medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." AR 20-21. More importantly, however, the ALJ found these statements not entirely credible "because they are simply not consistent with the preponderance of evidence." AR 21. Additionally, the ALJ found R.M.F.'s testimony regarding his limitations "inconsistent with his activity of daily living, the clinical findings, and course of treatment and therefore…not entirely credible." AR 21. The ALJ further highlighted evidence of R.M.F.'s noncompliance with treatment as supporting his determination regarding the credibility

of R.M.F.'s testimony.

Contrary to Plaintiff's argument, the Court concludes that the ALJ properly supported his findings regarding the weight assigned to these opinions. As noted by Plaintiff, SSR 06-03p discusses the evaluation of opinions from "other sources," including parents. SSR 06-03p provides that in evaluating these opinions, "it would be appropriate to consider…whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." As noted above, the ALJ accorded little weight to R.M.F.'s parents' opinions because they were inconsistent with the medical evidence. Plaintiff claims that the ALJ failed to provide evidentiary support for this finding. However, the ALJ first noted that the opinions were inconsistent with R.M.F.'s "activit[ies] of daily living, the clinical findings, and course of treatment." This conclusion was based on indications in the record that R.M.F. was "able to keep appointments, take[] care of personal needs, attend[] school and interact[] with family members and peers/teachers at school without…excess difficulty." AR 21. The ALJ further highlighted R.M.F.'s failure to comply with treatment. This finding is also supported by the record. *See e.g.*, AR 216-217, 564-65, 740-41. Finally, the ALJ noted that the record contained conflicting evidence regarding the frequency of R.M.F.'s headaches. In some instances, it was reported that R.M.F. suffered approximately one headache per week, which is in contradiction with his Step-father's report of five to six headaches per week and his Mother's report of daily headaches. *See* AR 216, 819. Accordingly, the Court concludes that the ALJ applied the proper legal standards in making his credibility determination and that such determination was consistent with the record.

### B. "Use and Acquiring Information" Domain

Plaintiff contends that the ALJ failed to properly evaluate whether R.M.F. has an extreme

limitation in the domain of acquiring and using information. Specifically, Plaintiff contends that the ALJ did not fully discuss all evidence relevant to this determination. Accordingly, Plaintiff contends that the ALJ's finding that R.M.F. has a marked limitation in this domain is not supported by substantial evidence.

As discussed below, the Court rejects Plaintiff's argument. The ALJ accorded great weight to the opinions of state agency medical consultants and his finding that R.M.F. has marked limitation in acquiring and using information was consistent with their opinions. AR 21 (*citing* AR 240, 251). The ALJ further discussed evidence from R.M.F.'s teachers that in 2013 he was reading at or near his grade level. AR 21. The ALJ noted, however, that R.M.F. still lagged behind in written language and math and accordingly found that R.M.F. had a marked limitation in this domain.

In reviewing the ALJ's decision on this point, the Court finds that the ALJ did not misapply the regulations. The gist of Plaintiff's argument on this point is that the ALJ was required to consider both mental and physical impairments that can affect a child's ability to acquire and use information. Doc. 20 at 11. While it is true that "[b]oth mental and physical impairments can affect a child's ability to acquire and use information," this determination is ultimately concerned with a "child's ability to learn information and to think about and use the information." SSR 09-3P. Plaintiff highlights no medical opinion evidence in the record indicating a link between R.M.F's physical impairments and his learning disabilities, much less that these impairments exacerbated any limitations he had in using and acquiring information beyond the marked limitation found by the ALJ. By way of example, although persistent migraines could potentially affect a child's concentration and thus his or her ability to learn, evidence in the record indicates that R.M.F. did not miss school due to his headaches. AR 224.

7

Without evidence in the record necessitating the ALJ to address R.M.F.'s physical limitations in this domain, the Court concludes that the ALJ complied with the appropriate regulations in reaching his decision.

Furthermore, the Court finds that the ALJ's finding that R.M.F. has a marked limitation in the domain of acquiring and using information is supported by substantial evidence. A "marked limitation" in this context is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Consultative examiners unanimously opined that R.M.F.'s limitations in this domain were marked, not extreme. *See* AR 240, 251. Plaintiff cites no medical source opinion evidence supporting her contention that R.M.F. has an extreme limitation in this domain. Further, while Plaintiff highlights various other types of evidence regarding R.M.F.'s learning disability, such evidence, at best, reveals only a conflict in the evidence. As such, Plaintiff's contentions on this point are merely an invitation to reweigh the evidence, which the Court will not do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007 ("We may not displace the agency's choice between to fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo." (internal quotations marks and citation omitted)).

In sum, in addition to the ALJ's reliance on the consultative examiners opinions that R.M.F.'s limitation in this domain was marked, the ALJ discussed evidence indicating that while R.M.F.'s academic performance was improving he still lagged behind in some areas. The ALJ thus found R.M.F.'s limitation marked in this domain. Plaintiff's selective emphasis on certain aspects of the evidence regarding R.M.F.'s learning disability does not detract from the soundness of the ALJ's conclusion on this point.

**C. Health and Physical Well-Being Domain**

Plaintiff contends that the ALJ failed to properly evaluate whether R.M.F. has a marked limitation in the domain of health and physical well-being. Plaintiff specifically challenges the ALJ's findings regarding R.M.F.'s asthma, obesity, sleep disorder, and headaches. Doc. 20 at 15. For the reasons explained below, the Court rejects Plaintiff's argument.

The Court finds Plaintiff's argument on this point an attempt to again draw the Court into reweighing the evidence by providing a general rehashing of evidence regarding R.M.F.'s conditions. As noted above, that is not the Court's function. The ALJ found that R.M.F. had a "less than marked" limitation in this domain. In so concluding, the ALJ accorded great weight to consultative examiners who opined that R.M.F.'s limitations in this domain were less than marked. AR 241, 253. Indeed, much of the evidence Plaintiff cites to in support of her argument is rebutted by pediatric physician Jon Aase, M.D. in explaining his opinion that R.M.F.'s limitations in this domain are less than marked. For instance, Dr. Aase referred to a sleep study finding that concluded that R.M.F. does not suffer from a sleep disorder. AR 253-54; *see also* AR 710 (sleep study finding of "normal for age…the patient's daytime symptoms of feeling sleepy and difficulty falling asleep is primarily due to poor sleep hygiene."). Dr. Aase further discussed medical records indicating that R.M.F.'s reports of migraines had drastically decreased and that medication for migraines and his asthma had successfully led to "improved function" in these areas. AR 254; *see also* AR 613, 819, 545. Finally, Dr. Aase noted that R.M.F. had recently begun exercising and lost weight.

Furthermore, although the ALJ did not discuss R.M.F.'s osgood-schlatter diagnosis in his discussion of this domain, the ALJ had previously determined that this diagnosis did not provide any salient limitations when analyzing it under the "moving about and manipulating objects" domain. AR 25-26. The ALJ's finding on this point was supported by the fact that R.M.F.'s

9

prescribed treatment for this condition contained "no restrictions" on his activity. AR 729. Accordingly, the Court concludes that substantial evidence supported the ALJ's finding that R.M.F.'s limitations in this domain were less than marked.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand to Agency for Rehearing (Doc. 20) and AFFIRMS the ALJ's decision.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE